UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristin Merone,<br><br>Plaintiff,<br><br>-against-<br><br>City of New York and Daniel G. Garcia,<br><br>Defendants. | **First Amended Complaint**<br><br>Jury Trial Demanded<br><br>24 CV 8730 (BMC) |

Formatted Table

Deleted: ¶

Formatted: No underline

Deleted: ;

Deleted: ; Robert A. Hakius; Matthew T. Brucato; Edward P. Sciarrillo; and John and Jane Doe 1-10

Plaintiff Kristin Merone, by her attorneys, Elefterakis, Elefterakis & Panek, as and for her complaint, respectfully alleges as follows:

## Preliminary Statement

1. This civil rights action challenges the NYPD's violent seizure of plaintiff on the evening of January 14, 2022, during which officers – who knew that Ms. Merone was suffering a mental health crisis and posed no threat – broke and dislocated the elbow of her dominant arm, causing her permanent debilitating injuries. The brutal assault of Ms. Merone was gratuitous but unfortunately not anomalous in the City of New York. Indeed, plaintiff's injuries resulted from flagrant violations of her constitutional rights and are representative of this City's persistent failure to properly protect and treat its most vulnerable residents: those who are mentally disabled and in crisis.

Deleted: is

2. Plaintiff now seeks redress under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") for the injuries caused by the brutal and malicious unconstitutional conduct of the defendants.

## Nature of the Action

3. This is an action to recover money damages and equitable relief arising out of the violation of plaintiff's rights.

## Jurisdiction and Venue

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights and is brought under 42 U.S.C. § 1983 and the ADA.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## Jury Demand

6. Plaintiff demands a trial by jury in this action.

## Parties

7. Plaintiff Kristin Merone is a resident of Suffolk County in the State of New York.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision,

Formatted: Centered

promotion and discipline of police officers and supervisory police officers, including the individually named defendant herein.

9. Defendant Daniel G. Garcia, at all relevant times, was an NYPD Detective assigned to the Emergency Services Unit who engaged in the unconstitutional conduct that injured plaintiff. Defendant Garcia was acting under color of law and is sued in his individual capacity and as a former employee of the City of New York.

Deleted: s

Deleted: The individual defendants are

Deleted: police officers and supervisors involved in the illegal conduct set forth herein that deprived plaintiff of her rights. Plaintiff does not know the true names of the John and Jane Doe defendants. The

Deleted: individual defendants

Deleted: ere

Deleted: each

Deleted: are each

Deleted: their

Deleted: s

## Statement of Facts

10. Plaintiff suffers from bipolar disorder with psychotic behavior, anxiety, and posttraumatic stress disorder.

11. The Diagnostic and Statistical Manual of Mental Disorders ("DSM") describes the symptoms of bipolar disorder as featuring severe mood changes, rapid speech and racing thoughts, as well as experiencing hallucinations and delusions.

12. Plaintiff's disability has prevented her from working in her field of training as a social worker and negatively impacts her ability to interact with strangers, particularly during manic episodes.

13. At approximately 10:00 p.m. on January 14, 2022, plaintiff was present outside her ex-boyfriend's home at 14 Wadsworth Avenue, Staten Island, New York, where she was suffering an acute manic episode.

14. Plaintiff's ex-boyfriend's family summoned plaintiff's parents and the police.

15. Upon arriving on the scene and for the ensuing approximately 45 minutes, the defendants were made well aware of plaintiff's disability by her parents and her ex-boyfriend's parents.

16. During the entire incident, which was captured on body worn camera footage, plaintiff made no threats and it was obvious that plaintiff posed no threat to herself or anyone else and that there was no need to take urgent or exigent action, or use any force.

17. It was obvious that what plaintiff needed was compassion and assistance.

18. Instead, defendant Garcia needlessly twisted plaintiff's arm, severely injuring her.[1]

19. Body camera footage obtained through discovery reveals that Garcia first attacked plaintiff without warning while she was seated on the porch communicating with another officer:

Deleted: s

Deleted: , Hakius and a third officer believed to be Brucato, Sciarillo or Doe

[1] Six civilians have accused defendant Garcia of excessive force. *See* https://www.50-a.org/officer/Y63.

Deleted: Notably, defendant Hakius has been the subject of 17 civilian complaints, all but two of which involved female complainants. *See* https://www.50-a.org/officer/GKPV.

Formatted: Centered




*Figure 1*

20. Indeed, plaintiff described the exact mechanism of injury as captured on the body camera footage in her deposition testimony:

"I felt a hand on each side of my elbow turning it in different directions."[2]

Formatted: Font: Adobe Garamond Pro

Formatted: Line spacing: single, Keep with next

Formatted: Caption, Centered, Line spacing: single, Widow/Orphan control, Adjust space between Latin and Asian text

Formatted: Font: Adobe Garamond Pro, 14 pt

Formatted: Font: Adobe Garamond Pro, 14 pt

Formatted: Normal, No bullets or numbering

[2] The body worn camera footage is accessible at https://vimeo.com/1103181965. An edited version with a slow-motion presentation of the point where Garcia apparently uses both hands and maximal force to unnaturally twist, dislocate and break plaintiff's elbow is accessible at https://vimeo.com/1103188264. Ms. Merone's screams at this juncture reflect the severity of the injury.

Formatted: Font: Adobe Garamond Pro

Formatted: Font: Adobe Garamond Pro

Formatted: Font: Adobe Garamond Pro

Formatted: Font: Adobe Garamond Pro

Formatted: Font: Adobe Garamond Pro

Formatted: Font: Adobe Garamond Pro




*Figure 2*

21. Knowing that he had just gratuitously twisted and broken plaintiff's elbow, Garcia then compounded the injury by using an unnecessary pain compliance hold on plaintiff's injured arm to force plaintiff down the porch with her arm unnaturally twisted:

Formatted: Font: Adobe Garamond Pro

Formatted: Font: Adobe Garamond Pro

Formatted: Line spacing: single, Keep with next

Formatted: Caption, Centered, Space After: 12 pt, Line spacing: single, No bullets or numbering, Widow/Orphan control, Adjust space between Latin and Asian text

Formatted: Centered




*Figure 3*

22. At the bottom of the stairs and with full awareness of the extreme pain he was inflicting, Garcia then needlessly and cruelly forced plaintiff's injured arm into handcuffs:




*Figure 4*



Formatted: Font: Adobe Garamond Pro

Formatted: Line spacing: single, Keep with next

Formatted: Caption, Centered, Space After: 12 pt, Line spacing: single, No bullets or numbering, Widow/Orphan control, Adjust space between Latin and Asian text

Formatted: Font: Adobe Garamond Pro

Formatted: Line spacing: single, Keep with next

Formatted: Caption, Centered, Space After: 12 pt, Line spacing: single, No bullets or numbering, Widow/Orphan control, Adjust space between Latin and Asian text




*Figure 5*




*Figure 6*



**Deleted:**




**Formatted:** Font: Adobe Garamond Pro

**Formatted:** Caption, Indent: Left: 0", Space After: 12 pt, Line spacing: single, Widow/Orphan control, Adjust space between Latin and Asian text

**Formatted:** Font: Adobe Garamond Pro

**Formatted:** Line spacing: single, Keep with next

**Formatted:** Caption, Indent: Left: 0", Line spacing: single, Widow/Orphan control, Adjust space between Latin and Asian text

**Formatted:** Centered

23.At no point did plaintiff resist apprehension or pose any threat to the defendants or anyone else.

24.Plaintiff was not cited for any violation of law or taken into police custody; instead, she was strapped to a gurney with her injured arm handcuffed painfully behind her back and put into an ambulance while writhing and screaming in agony.




Figure 7

25.As a result of defendants' conduct, plaintiff sustained, *inter alia*, right dominant arm elbow dislocation with resultant subluxation of ulnohumeral joint, subacute, with rupture of lateral collateral ligament and coronoid tip avulsion.

26.After suffering without proper treatment from January 14-February 17, 2022, plaintiff underwent right open reduction of subacute subluxation with application of



Formatted: Font: Adobe Garamond Pro
Formatted: Font: Adobe Garamond Pro
Formatted: Indent: Left: 0.25", No bullets or numbering
Formatted: Font: 12 pt
Formatted: Caption, Centered, Indent: Left: 0.25", Space After: 12 pt, Line spacing: single, No bullets or numbering, Widow/Orphan control, Adjust space between Latin and Asian text
Formatted: Font: Italic
Formatted: Font: Adobe Garamond Pro, 14 pt

lateral-based internal joint stabilizer, right lateral ulnar collateral ligament repair with local tissue, right long arm posterior plaster splint application.

27. Then, on or about September 19, 2022, with plaintiff still suffering immense pain, plaintiff underwent right elbow removal of deep hardware and right elbow contracture release.

28. Plaintiff remains symptomatic following these interventions and has suffered, *inter alia*, numbness, including into hand; tingling, including into hand; hypersensitivity at medial elbow; cracking; locking; aches and pains, worsened with extension; hypoesthesia; swelling, including into hand; cubital tunnel syndrome; internal derangement; marked restriction in range of motion; chronic pain; muscle spasms; future development of arthritis; need for future arthritic therapy; need for future physical therapy; need for future pain management; need for future orthopedic care; need for future neurological care; need for future surgery of the right elbow/arm including, *inter alia*, arthroscopy, total joint replacement, and/or revision; post-traumatic stress disorder; exacerbation of schizoaffective disorder, bipolar type; exacerbation of bipolar disorder; exacerbation of psychosis; exacerbation of ADHD; exacerbation of anxiety; exacerbation of depression; exacerbation of paranoia; exacerbation of mania; agoraphobia; long-lasting trauma; panic attacks; flashbacks; mental anguish; loss of self-confidence; feelings of hopelessness; feelings of helplessness;

Formatted: Normal, Indent: Left: 0", First line: 0.25", Line spacing: Double, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0.25", No widow/orphan control, Don't adjust space between Latin and Asian text

Formatted: Font: Adobe Garamond Pro, 14 pt, Italic

Formatted: Font: Adobe Garamond Pro, 14 pt

Formatted: Centered

feelings of injustice; feelings of loss of purpose; feelings of abandonment; fear of police; traumatic experiences while in custody; stigma negative perception of justice system; emotional distress; sleep problems; sleep deprivation; claustrophobia during imaging exams; isolation; strain on relationships; lost time with family/friends; fear; humiliation; embarrassment; inpatient hospitalizations; and need for ongoing therapy.



*Figure 8*



*Figure 9*

Formatted: Caption, Centered, No bullets or numbering

Deleted:




Deleted: ’

**A Custom, Policy and Practice of Failing to Properly Handle Individuals with Mental Illnesses**

29.On January 14, 2022, defendants violated existing NYPD policies when they encountered plaintiff. These violations were a direct result of the individual defendant's and the City's deliberate indifference to individuals deemed emotionally disturbed persons (hereinafter, "EDP" or "EDPs").

30. Prior to and at the time of the incident, plaintiff was identified by the defendants as a possible EDP. As such, defendants were required to follow certain rules and regulations of the NYPD, some of which are outlined in the NYPD Patrol Guide and which required defendants to employ particular methods and to otherwise use reasonable care in their treatment of plaintiff.

31. For example, Section 216-05 of the NYPD Patrol Guide explicitly states: "Do not attempt to take [emotionally disturbed persons] into custody without the specific direction of a supervisor" and "attempt to isolate and contain [the person] while maintaining a zone of safety until arrival of a patrol supervisor and Emergency Service Unit personnel."

32. Despite the foregoing, defendants failed to follow the Patrol Guide, ADA and other governing standards. Instead, they aggressively and needlessly escalated to extreme force, and were otherwise wantonly reckless in the manner in which they treated plaintiff, in complete disregard for the preservation of her wellbeing.

33. The defendants knew of plaintiff's diagnosis and failed to follow the Patrol Guide protocol.

34. Despite this knowledge of plaintiff's condition, the defendants deliberately and intentionally disregarded the directives for dealing with alleged EDPs set out in the Patrol Guide.

**Formatted:** Centered

35.As a direct and proximate result of their deliberate disregard of Patrol Guide procedures, plaintiff was severely injured by the defendants.

36.Upon information and belief, the City of New York was or should have been aware of police officers' past poor treatment of emotionally disturbed persons, yet failed to adequately screen, train, supervise, or discipline police officers regarding the mental health care needs of citizens including, but not limited to, the use of equipment other than guns to restrain persons, evaluation of initial encounters with police controlling situations with emotionally disturbed persons and adequate medical care. Said inaction constitutes deliberate indifference that caused the severe injuries of plaintiff.

37.The NYPD has acknowledged the failures of its *de facto* EDP policy by implementing a Crisis Intervention Team (CIT) beginning in the summer of 2015.

38.In a January 2017 Report by the New York City Department of Investigation, Office of the Inspector General for the NYPD (OIG-NYPD), the OIG-NYPD identified long- standing deficiencies in the NYPD's handling of responses to EDPs.[3]

[3] *Putting Training Into Practice: A Review of NYPD's Approach to Handling Interactions with People in Mental Crisis* (Jan. 2017), available at https://www.nyc.gov/assets/oignypd/downloads/pdf/Reports/CIT_Report_01192017.pdf.

39. The Report criticized the NYPD's lack of an EDP policy and the failure to properly train police officers on how to handle responding to individuals with mental disabilities prior to the summer of 2015.[4]

40. The Report also identified certain changes implemented by the NYPD since the summer of 2015: "[s]ince the summer of 2015, NYPD has been working to enhance the training it provides officers in handling these complicated and often volatile encounters by creating and implementing Crisis Intervention Team (CIT) training." *Id.*

41. However, since its implementation in the summer of 2015, the NYPD's new policy remains flawed. The Report criticizes the "NYPD's failure to fully integrate and use [the CIT] training within the totality of NYPD's everyday policing." *Id.* at 1.

42. These failures include failing to create a department-wide CIT system, failing to adjust or amend the Patrol Guide or create a written policy to reflect the goals and approach of the new CIT training programs, and existing deficiencies in the current CIT trainings. *Id.* at 14, 17, 28.

[4] The Report also identifies that, in several cities, "the failure to adequately manage police interactions with the mentally ill has resulted in U.S. Department of Justice (DOJ) findings, settlement agreements, and consent decrees in which federal monitors have been installed to oversee court-mandated improvements in the way those cities' police departments police." *Id.* at 2.



Formatted: Single Space Paragraph w/Para Num,SSN, Left, Indent: Left: 0", First line: 0.25", Space After: 6 pt, Line spacing: Double, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0.25", Tab stops: Not at 4.65"

Deleted: ¶
¶
¶

Formatted: Font: Adobe Garamond Pro, 14 pt, Bold, Underline

Formatted: Centered

## FIRST CLAIM
### *Monell*

43. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

44. The unconstitutional conduct of the individual defendant was directly and proximately caused by the *de facto* policies, practices, and/or customs devised implemented, enforced, encouraged, and sanctioned by the City whereby written policies are ignored in practice in favor of *de facto* policies.

Deleted: s

45. Defendant City of New York developed and maintained customs, policies and practices exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff's rights.

46. It is a custom, policy, and/or practice of the City of New York to conduct inadequate screening in the hiring of police officers for their propensity for violence and bias against and insensitivity toward emotionally disturbed persons.

47. The City of New York developed and maintained a culture of indifference with respect to emotionally disturbed individuals and have created a de facto NYPD policy of brute and excessive force which, in many instances, have led to death.

48. The *de facto* policy and the culture of indifference have existed for years, including, but not limited to, the following examples:

(a) 1984: *Bumpers v. New York City Transit Authority et al.*: When Housing Authority Officials asked for NYPD assistance with the eviction of a 66-year-

old African American women they knew was mentally disturbed, officers broke in, ultimately shooting and killing Ms. Bumpers.

(b) 2001: *Kerman v. City of New York et al.*: NYPD officers forcibly entered Mr. Kerman's apartment without a warrant and, knowing he was mentally disabled, slammed the door against Mr. Kerman's forehead, then forcibly restrained him.

(c) 2004: *Estate of Busch v. City of New York et al.*: Six NYPD officers responded to a call regarding a mentally disturbed 29-year-old man with a hammer, and shot him twelve times, killing him instantly.

(d) 2007: *Khiel Choppin*: The mother of a mentally disabled man called 911 seeking assistance to help transport her son to a psychiatric hospital. Mr. Choppin was shot and killed by NYPD officers after he attempted to escape by climbing out of his window and holding a hairbrush under his shirt. He was unarmed.

(e) 2008: *Negron v. City of New York et al.*: When officers responded to a mother's request for help with her son Iman Morales, who suffered from schizoaffective disorder and had barricaded himself into his apartment, the officers chose to use a Taser when Morales was standing on a ledge, causing him to fall off the ledge to his death.

(f) 2012: *Francis v. City of New York et al.*: On March 15, 2012, Shereese Francis, an unarmed 29 year-old woman, was killed in her own home by NYPD officers summoned by her family to transport her to the hospital for psychiatric evaluation and care. The officers needlessly antagonized Ms. Francis, chased her, and tackled her onto a bed, pressed their weight on her until she suffered cardiac arrest, and then prevented her from receiving appropriate, timely medical care.

(g) 2012: *Bah v. City of New York*: Mohamed Bah's mother called for an ambulance for her son after he began acting strangely, informing the dispatcher that he had mental health issues. Rather than an ambulance, police officers arrived and, despite his refusal and his mother's objections, confronted Mr. Bah. The officers refused his mother's request to let her try and calm him down. NYPD officers with police shields, Tasers, and other weapons surrounded the apartment and forced open Mr. Bah's front door. The officers used a Taser against Mr. Bah, fired bean bags at him, and ultimately shot and killed him.

**Formatted:** Centered

(h) 2016: *Deborah Danner*: Ms. Danner was a 66-year-old African-American woman with a history of schizophrenia who was killed by the NYPD on October 18, 2016. The NYPD responded to a call that a woman had been acting erratically in an apartment building. When they arrived. Ms. Danner was holding kitchen scissors. The officer then allege that she picked up a wooden bat. Sergeant Hugh Barry shot Ms. Danner twice, killing her. In response, NYPD Police Commissioner James P. O'Neill stated that "we've established procedures and protocols for handling emotionally disturbed people. That's to keep everybody safe, that's to keep the cops safe, the community safe and the person that we're dealing with safe." He added, "it looks like some of those procedures weren't followed."[5]

(i) 2016*: Conrad v. City of New York*: NYPD officers were summoned to a Food Emporium after a customer, Garry Conrad, had been reported acting erratically. After Mr. Conrad was escorted out of the store, officers approached Mr. Conrad and, rather than de-escalating the situation, caused further escalation. The officers shot Mr. Conrad seven times after he allegedly brandished a knife.

(j) September 6, 2017: *Miguel Richards*: NYPD officers responded to a request from a Bronx landlord to check on a tenant. The officers found Mr. Richards in his room standing in a corner with a knife—and what was later discovered to be a toy gun—in his hand. For approximately 15 minutes, officers screamed at him, instructing him to put his knife down. Mr. Richards did not move or make a sound. During the exchange, one officer suggested that the officers close the door and allow the Emergency Service Unit officers, who were downstairs, to handle the situation. Instead, the officers escalated the situation by bursting in and firing 16 shots at Mr. Richards, killing him instantly.

49. As a direct and proximate result of the foregoing acts, omissions, systemic deficiencies and the City's deliberate indifference, plaintiff's constitutional rights were

[5] Mark Berman, *'We failed,' New York police commissioner says of sergeant fatally shooting 'emotionally disturbed' woman*, Wash. Post, Oct. 19, 2016, *available at* https://www.washingtonpost.com/news/post-nation/wp/2016/10/19/new-york-police-sergeant-fatally-shoots-emotionally-disturbed-woman-in-the-bronx/.

Formatted: Font: Adobe Garamond Pro, 10 pt

Formatted: Font: 10 pt

violated, because of which she suffered substantial damages in an amount to be determined at trial.

50. As a result of the foregoing, plaintiff suffered the injuries and damages alleged herein.

Deleted: he which he

Deleted: at

Formatted: Single Space Paragraph w/Para Num,SSN, Left, Indent: Left: 0", First line: 0.25", Line spacing: Double, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0.25"

Deleted: ¶

Formatted: Font: Adobe Garamond Pro, 14 pt, Bold, Underline

## SECOND CLAIM
## Title II of the ADA and the Rehabilitation Act

51. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

52. The NYPD is a federally funded program of the City.

53. Plaintiff is a disabled person by virtue of a mental impairment that substantially limited one or more of her major life activities, including, but not limited to, her ability to maintain employment and to interact with strangers, and was regarded as such by the individual defendant after speaking to colleagues and plaintiff at the location of her apprehension.

Deleted: s

Deleted: members of plaintiff's family

54. The NYPD officers' response to the incident involving plaintiff on January 14, 2022, constitutes a program and activity of NYPD and the City of New York.

55. On January 14, 2022, plaintiff met the essential eligibility requirements for the receipt of NYPD services.

Formatted: Centered

56. The NYPD had a procedure in place at the time plaintiff was injured for dealing with individuals known to be EDPs. This procedure is set forth in Section 216-05 of the NYPD Patrol Guide.

57. The actions of the defendants were not in compliance with the services set forth by the NYPD in Patrol Guide § 216-05 for individuals "who appear[] to be mentally ill or temporarily deranged" where the individual is acting "in a manner which a police officer reasonably believes is likely to result in serious injury" to the individual or others.

58. Pursuant to the Patrol Guide, the officers were required to "assess situation as to threat of immediate serious physical injury to EDP, other persons present, or members of service. Take cover, utilize protective shield if available and request additional personnel, if necessary."

59. Instead, the defendants forcefully apprehended plaintiff, twisting her arms behind her back, with full knowledge that she had been diagnosed with bipolar disorder and that she was entitled to a reasonable accommodation and compassion.

60. Plaintiff was discriminated against and deprived of equal access to and the benefits of police services because of her disability, because the officers who seized, restrained, and severely injured her on January 14, 2022 failed to reasonably accommodate her disability by needlessly confronting her, by rushing their encounter with her, by not waiting for a supervisor or other more appropriately trained officer to

arrive at the scene before physically apprehending her, by escalating the situation, and by using unreasonable force instead of other readily-available techniques for de-escalating the situation and nonviolently bringing plaintiff to a hospital.

61. Defendants discriminated against plaintiff by reason of her mental health disability, denying her the benefits of the services, programs, and activities to which she was entitled as a person with a mental health disability, including, but not limited to, the right to be free of discriminatory or disparate treatment by virtue of her mental disability, and to due process of the law. As a result, plaintiff suffered harm in violation of her rights under the laws and Constitution of the United States, 42 U.S.C. § 12132 and 29 U.S.C. § 794.

62. Defendant City of New York has failed to comply with the mandates of 42 U.S.C. § 12132 and 29 U.S.C. § 794 in the following areas:

(a) The failure to properly train, supervise, and discipline police officers and detectives regarding crisis intervention techniques for individuals who exhibit the signs and symptoms of mental disabilities;

(b) The failure to provide adequate training and resources for police officers and detectives and others who encounter persons with mental health disabilities;

(c) The failure of police officers and detectives to follow established policies, procedures, directives, and instructions regarding crisis intervention

Formatted: Centered

techniques for individuals who exhibit the signs and symptoms of mental health disabilities.

63. By all these actions, defendants have deprived plaintiff of rights secured by the United States Constitution, 42 U.S.C. § 12132 and 29 U.S.C. § 794.

**THIRD CLAIM**
**Unreasonable Force**

56. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

57. Defendant Garcia violated the Fourth and Fourteenth Amendments because he used unreasonable force on plaintiff.

58. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**Deleted:** The individual defendants

**Deleted:** they

**Deleted:** FOURTH CLAIM¶

**Formatted:** Font: Adobe Garamond Pro

## Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendant;

(c) An injunction requiring the City of New York to revise NYPD's policies, practices and training to ensure that civilians in mental health crises who encounter NYPD officers are dealt with humanely and lawfully;

(d) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(e) Such other and further relief as this Court deems just and proper.

Dated: July 28, 2025
New York, New York

Elefterakis, Elefterakis & Panek

______________________
Gabriel P. Harvis
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116
gharvis@eeplaw.com

*Attorneys for plaintiff*

**Deleted: Deliberate Indifference to Safety/Medical Needs**
Plaintiff repeats and realleges each and every allegation as if fully set forth herein.
The individual defendants were aware of a risk to plaintiff's safety and a need for medical care and failed to act in deliberate indifference to plaintiff's needs.
Accordingly, the individual defendants violated the Fourteenth Amendment because they acted with deliberate indifference to plaintiff's medical needs and safety.
As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.
FIFTH CLAIM
**Failure to Intervene**
Plaintiff repeats and realleges each and every allegation as if fully set forth herein.
Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.
Accordingly, the defendants who failed to intervene violated the Fourth and Fourteenth Amendments.
As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.
Accordingly, plaintiff sustained the damages hereinbefore alleged.

**Deleted:** s, jointly and severally

**Deleted:** e

**Formatted:** Font: Adobe Garamond Pro

**Deleted:** December 20

**Deleted:** 4

**Formatted:** Space After: 28 pt

**Deleted:** Michael Gluck

**Deleted:** mgluck

**Formatted:** Centered