24-CV-8730 (BMC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


KRISTIN MERONE,

                                                    Plaintiff,

- against -

CITY OF NEW YORK and DANIEL G. GARCIA,

                                                    Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS CITY AND GARCIA'S MOTION
FOR SUMMARY JUDGMENT**


*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City and Garcia*
*100 Church Street*
*New York, N.Y. 10007*


*Of Counsel: Zachary Kalmbach*
*Tel: (212) 356-2322*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

STANDARD OF LAW ............................................................................................................. 6

ARGUMENT

        POINT I

                PLAINTIFF'S   EXCESSIVE   FORCE   CLAIM
                FAILS ...................................................................................................... 7

                A.  Defendant Garcia's use of force was reasonable
                      under the circumstances ........................................................... 7

                B.  Defendant   Garcia   is   entitled   to   qualified
                      immunity ................................................................................. 10

        POINT II

                PLAINTIFF'S   ADA   AND   REHABILITATION
                ACT CLAIM FAILS ............................................................................ 13

        POINT III

                PLAINTIFF'S   MONELL   CLAIM   FAILS
                BECAUSE   THERE   WAS   NO   UNDERLYING
                CONSTITUTIONAL VIOLATION ...................................................... 15

CONCLUSION ........................................................................................................................ 16

CERTIFICATION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)................................................................................6

Bartlett v. City of New York,
    No. 03-CV-1961 (CPS), 2005 U.S. Dist. LEXIS 4829
    (E.D.N.Y. Feb. 11, 2005)......................................................................8, 9

Batt v. Buccilli,
    725 F. App'x 23 (2d Cir. 2018) ...........................................................12

Bradway v. Gonzales,
    26 F.3d 313 (2d Cir. 1994).....................................................................11

Caldarola v. Calabrese,
    298 F.3d 156 (2d Cir. 2002)....................................................................7

City & County of San Francisco v. Sheehan,
    575 U.S. 600 (2015)...............................................................................11

City of Escondido v. Emmons,
    586 U.S. 38 (2019).................................................................................12

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)...............................................................................15

City of Tahlequah v. Bond,
    595 U.S. 9 (2021).............................................................................11, 12

Ferraresso v. Town of Granby,
    464 F. Supp. 2d 296 (D. Conn. 2009)......................................................9

Gill v. Dawkins,
    No. 16-CV-1398 (LDH) (SB), 2020 U.S. Dist. LEXIS 223421
    (E.D.N.Y. Nov. 30, 2020).................................................................8, 9, 12

Gonzalez v. City of Schenectady,
    728 F.3d 149 (2d Cir. 2013)....................................................................11

Graham v. Connor,
    490 U.S. 386 (1989).......................................................................7, 8, 10

Johnson v. County of Saratoga,
    No. 9:18-CV-0096, 2018 U.S. Dist. LEXIS 238917
    (N.D.N.Y. Apr. 16, 2018)........................................................................9

| Cases | Pages |
|---|---|

Jones v. Yazzo,
    481 F. Supp. 3d 109 (E.D.N.Y. 2020)........................................6

Kalfus v. New York & Presbyterian Hosp.,
    476 F. App'x 877 (2d Cir. 2012)...........................................9

Kisela v. Hughes,
    584 U.S. 100 (2018).......................................................11

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995).................................................8

Martinez v. City of New York,
    No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203
    (S.D.N.Y. June 27, 2008),
    aff'd, Martinez v. Muentes,
    340 F. App'x 700
    (2d Cir. July 27, 2009)...................................................15

McElwee v. County of Orange,
    700 F.3d 635 (2d Cir. 2012)...............................................13

Mullenix v. Luna,
    577 U.S. 7 (2015).........................................................11

Patterson v. County of Oneida,
    375 F.3d 206 (2d Cir. 2004)................................................7

Plumhoff v. Rickard,
    572 U.S. 765 (2014).......................................................11

Rivas-Villegas v. Cortesluna,
    595 U.S. 1 (2021).........................................................12

Sagesse v. City of New York,
    No. 22 Civ. 8414 (RA), 2024 U.S. Dist. LEXIS 56415
    (S.D.N.Y. Mar. 28, 2024)...................................................9

Schnauder v. Gibens,
    679 F. App'x 8 (2d Cir. 2017).............................................14

Taravella v. Town of Wolcott,
    599 F.3d 129 (2d Cir. 2010)...............................................11

White v. Pauly,
    580 U.S. 73 (2017)........................................................11

**Cases**                                                                                          **Pages**

Zdziebloski v. Town of E. Greenbush,
    336 F. Supp. 2d 194 (N.D.N.Y. 2004) ...................................................................7

**Statutes**

29 U.S.C. § 794(a) ...................................................................................................13

42 U.S.C. § 12132 ...................................................................................................13

Fed. R. Civ. P. 56 .....................................................................................................5

Fed. R. Civ. P. 56(a) ................................................................................................5

**Other Authorities**

NYPD Patrol Guide § 216-05 ..................................................................................13

NYPD Patrol Guide § 221-13 ..................................................................................13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KRISTIN MERONE,

                              Plaintiff,

            -against-

CITY OF NEW YORK and DANIEL G. GARCIA,

                            Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITY AND GARCIA'S MOTION FOR SUMMARY JUDGMENT**

24-CV-8730 (BMC)

## PRELIMINARY STATEMENT

Officers responded to a 911 call reporting that plaintiff was refusing to leave her ex-boyfriend's house. After speaking with plaintiff and other people on scene, the officers determined that plaintiff was an Emotionally Disturbed Person ("EDP"), which meant that she needed to be taken to the hospital for a mental health evaluation. The responding officers, plaintiff's family, Emergency Medical Technicians ("EMTs"), and Emergency Service Unit ("ESU") detectives pleaded with plaintiff for nearly an hour to voluntarily go to the hospital. Officers told plaintiff that if she did not go voluntarily, they would have to physically remove her. Because no one could convince plaintiff to go voluntarily, the ESU detectives—including defendant Garcia—were forced to physically take hold of plaintiff and remove her from her ex-boyfriend's porch and into a waiting ambulance. When they attempted to do so, plaintiff immediately began screaming at them and physically resisted their efforts to take hold of her. At the same time, plaintiff's dog—which plaintiff refused to move from between her legs— aggressively barked and growled at the officers. In the face of plaintiff's active resistance and the dog's threatening behavior, defendant Garcia managed to put plaintiff's arm behind her back and escort her away from the porch, all while plaintiff continued screaming and resisting.

Plaintiff alleges that defendant Garcia's actions amounted to excessive force and that the officers on scene collectively violated the American with Disabilities Act ("ADA") and the Rehabilitation Act. Plaintiff's excessive force claim should be dismissed because defendant Garcia's use of force was reasonable in light of, *inter alia*, plaintiff's active resistance. At a minimum, defendant Garcia is entitled to qualified immunity because he did not violate any clearly established law. Plaintiff's ADA and Rehabilitation Act claim fails because, *inter alia*, the officers on scene went above and beyond in accommodating her disability. Plaintiff's <u>Monell</u> claim—which was bifurcated—should be dismissed because there is no underlying constitutional violation. Accordingly, the Court should grant summary judgment in defendants' favor and dismiss all of plaintiff's claims.

## STATEMENT OF FACTS

On January 14, 2022, at around 10:00 p.m., several New York City Police Department officers responded to 14 Wadsworth Avenue in Staten Island in response to a 911 call from an individual reporting that his ex-girlfriend—who the officers later learned to be plaintiff—was refusing to leave his house. <u>See</u> Rule 56.1 Statement of Undisputed Facts ("56.1 Stmt.") at ¶ 1; I/Net Dispatcher Event Chronology at D000005, annexed to the Declaration of Zachary Kalmbach ("Kalmbach Decl.") as Exhibit ("Ex.") A; Deposition Transcript of Officer Brucato ("Brucato Tr.") at 14:9-17:6, Kalmbach Decl., Ex. B. Officers Hakius and Brucato arrived first and spoke with plaintiff's ex-boyfriend, who told the officers that plaintiff was refusing to leave his house and that she had mental issues. 56.1 Stmt. at ¶ 2; Body-Worn Camera ("BWC") Footage of Officer Hakius ("Hakius BWC") at 1:00-1:57, Kalmbach Decl., Ex. C. It was about 20 degrees outside, and plaintiff appeared to be wearing a light jacket. 56.1 Stmt. at ¶ 3; Brucato Tr. at 83:3-4, Kalmbach Decl. as Ex. B; All BWC, *passim*. Officers Hakius and Sciarrillo walked towards the porch of the house. 56.1 Stmt. at ¶ 4; Hakius BWC at 2:03-2:17; BWC of Officer Sciarrillo

("Sciarrillo BWC") at 1:40-1:58, Kalmbach Decl., Ex. D. As they reached the top of the stairs, plaintiff's dog growled and barked at them. 56.1 Stmt. at ¶ 5; Sciarrillo BWC at 1:57-2:10. The officers began speaking with plaintiff. 56.1 Stmt. at ¶ 6; Sciarrillo BWC at 2:10.

Plaintiff stated, *inter alia*, that she lived in Long Island and that she was at the house because everywhere she went her family and friends harassed her. 56.1 Stmt. at ¶ 7; Sciarrillo BWC at 3:20-3:28. Plaintiff also stated that her car was in Queens because she caught her brother following her. 56.1 Stmt. at ¶ 8; Hakius BWC at 3:35-4:10. Officer Hakius told plaintiff that she needed to leave the house. 56.1 Stmt. at ¶ 9; Hakius BWC at 4:25-4:45. Plaintiff told the officers that she did not have any method of transportation. 56.1 Stmt. at ¶ 10; Hakius BWC at 4:45-5:23. Officers Hakius and Brucato then went inside the house and spoke with the occupants. 56.1 Stmt. at ¶ 11; Hakius BWC at 5:24-5:32. A woman inside the house told the officers that plaintiff was the ex-boyfriend of the man outside, and that plaintiff had not been around in four years 56.1 Stmt. at ¶ 12; Hakius BWC at 5:32-5:50. The woman also told the officers that plaintiff had been hiding outside, that they had told her to leave, and that she believed plaintiff had been diagnosed with a few mental conditions. 56.1 Stmt. at ¶¶ 13-14; Hakius BWC at 5:50-6:15. She also told the officers that plaintiff had "shown up out of nowhere" and had been hiding behind a barbecue since that morning. 56.1 Stmt. at ¶ 15; Hakius BWC at 6:15-6:41.

The officers conferred and determined that plaintiff was an EDP. 56.1 Stmt. at ¶ 16; BWC Footage of Officer Brucato ("Brucato BWC") at 6:50-7:00, Kalmbach Decl., Ex. E. Officer Brucato notified dispatch that plaintiff was an EDP, and an ambulance was summoned. 56.1 Stmt. at ¶ 17; Brucato BWC at 7:20-7:40; I/Net Dispatcher Event Chronology at D000006. Plaintiff told the officers that she was "freezing." 56.1 Stmt. at ¶ 18; Hakius BWC at 7:30-7:34. Officer Hakius spoke with plaintiff's parents, who stated that everything plaintiff told the officers

3

was untrue. 56.1 Stmt. at ¶ 19; Hakius BWC at 8:30-8:59. Officer Hakius asked plaintiff to give her dog to her parents, and plaintiff refused. 56.1 Stmt. at ¶ 20; Hakius BWC at 9:38-9:50. Officer Hakius told plaintiff that she needed to be evaluated by EMS and that she might have to go to the hospital, and plaintiff indicated that she would not comply. 56.1 Stmt. at ¶ 21; Hakius BWC at 9:50-12:10. Officer Hakius then told plaintiff that if she refused to go to the hospital she would be placed in handcuffs. 56.1 Stmt. at ¶ 22; Hakius BWC at 12:10-12:40. Plaintiff stated, "I'm not moving." 56.1 Stmt. at ¶ 23; Hakius BWC at 12:37. Officer Hakius again told plaintiff she would be placed in handcuffs, and plaintiff responded, "you can't." 56.1 Stmt. at ¶ 24; Hakius BWC at 12:38-12:42.

The officers and plaintiff's parents continued to plead with plaintiff until EMTs arrived. 56.1 Stmt. at ¶ 25; Hakius BWC at 12:42-28:16. EMTs arrived, conferred with the officers and plaintiff's parents, spoke with plaintiff, and determined that plaintiff was an EDP and needed to go to the hospital. 56.1 Stmt. at ¶ 26; Brucato BWC at 22:30-28:47. Officers, EMTs, and plaintiff's parents continued to plead with her until and after ESU officers arrived. 56.1 Stmt. at ¶ 27; Hakius BWC at 28:45-41:39.

ESU detectives, including Detectives Garcia, Jason Muller, and Min Kim arrived on scene, and other officers briefed them on the situation, including that plaintiff was an EDP, that officers had been negotiating with her "for like fifty minutes," that plaintiff was refusing to give up her dog, and that the dog was "mildly aggressive." 56.1 Stmt. at ¶ 28; BWC Footage of Officer Andrew Tagliaferro at 31:43-32:34 ("Tagliaferro BWC"), Kalmbach Decl., Ex. F. The ESU detectives spoke with plaintiff for another several minutes, but plaintiff continued to refuse to comply. 56.1 Stmt. at ¶ 29; BWC Footage of Detective Muller ("Muller BWC") at 1:00-5:44, Kalmbach Decl., Ex. G. The patrol supervisor, Sergeant Mohsin Mohsin, was summoned and

responded to the scene, and the officers conferred with him before plaintiff was taken into custody. 56.1 Stmt. at ¶ 30; BWC Footage of Sergeant Moshin ("Mohsin BWC"), *passim*, Kalmbach Decl., Ex. H.  In total, multiple patrol officers, EMTs, plaintiff's parents, and ESU detectives pleaded with plaintiff for about forty-five minutes.  56.1 Stmt. at ¶ 31; All BWC, *passim*.

   After plaintiff continued to refuse to comply, ESU Detective Kim reached towards plaintiff's dog, and plaintiff responded by pulling the dog away from him.  56.1 Stmt. at ¶ 32; BWC of Detective Kim ("Kim BWC") at 3:43, Kalmbach Decl., Ex. I.  Detectives Garcia and Muller then attempted to take hold of plaintiff, and she immediately began screaming.  56.1 Stmt. at ¶ 33; Kim BWC at 3:53; Muller BWC at 5:43.  Plaintiff tensed her arms, clenched her fists, continued to scream at the officers, and refused to move from the chair.  56.1 Stmt. at ¶ 34; Kim BWC at 3:50-4:07.  Plaintiff's dog aggressively barked and growled at the officers as they tried to take hold of plaintiff.  56.1 Stmt. at ¶ 35; Kim BWC at 4:05.  While the dog was barking at the officers and plaintiff was screaming and resisting the detectives' efforts to control her, Detective Garcia attempted to put plaintiff's right arm behind her back.  56.1 Stmt. at ¶ 36; Muller BWC at 5:55.  Plaintiff physically resisted Detective Garcia's efforts to do so.  56.1 Stmt. at ¶ 37; Muller BWC at 5:48-5:57.  Detective Garcia continued to attempt to put plaintiff's right arm behind her back, and was eventually able to do so.  56.1 Stmt. at ¶ 38; Muller BWC at 5:58.  Plaintiff's right hand reached as high as the upper-middle portion of her back, where it stayed for about two seconds.  56.1 Stmt. at ¶ 39; Muller BWC at 5:58-5:59.  At the same time, the dog continued to bark at the officers and plaintiff continued to scream at the officers and resist their efforts to control her.  56.1 Stmt. at ¶ 40; Muller BWC at 5:58-5:59.  Plaintiff's right hand moved down towards the middle-lower portion of her back as the Detectives Garcia and Muller were able to take control of her.  56.1 Stmt. at ¶ 41; Muller BWC at 6:00.  Detective Garcia attempted to take control of the

dog's leash while at the same time attempting to hold on to plaintiff. 56.1 Stmt. at ¶ 42; Kim BWC at 4:13-4:17. As Detective Garcia did so, plaintiff kicked her foot out towards his leg. 56.1 Stmt. at ¶ 43; Kim BWC at 4:14. While plaintiff continued to scream at the officers, Detective Garcia and Muller lifted her from her chair and guided her away from the porch. 56.1 Stmt. at ¶ 44; Kim BWC at 4:14-4:20.

Plaintiff continued to scream at the officers as Detectives Garcia and Muller walked her down the porch steps, and Detective Garcia continued to hold onto plaintiff's right hand. 56.1 Stmt. at ¶ 45; Muller BWC at 6:10-6:25. Plaintiff attempted to pull her arm away from Detective Garcia, while she continued to scream at the officers. 56.1 Stmt. at ¶ 46; Muller BWC at 6:10. As Detectives Garcia and Muller attempted to walk plaintiff to the ambulance, plaintiff planted her feet and pushed her weight backwards. 56.1 Stmt. at ¶ 47; Hakius BWC at 46:56. Detective Garcia then handcuffed plaintiff. 56.1 Stmt. at ¶ 48; Hakius BWC at 47:03-47:19.

Plaintiff stated "don't do that to my arm" just before Officer Hakius helped her onto a gurney, which was the first time plaintiff said anything about her arm. 56.1 Stmt. at ¶¶ 49-50; Hakius BWC at 47:29; All BWC, *passim*. Officer Hakius then helped plaintiff to sit on the gurney, and the EMTs rolled the gurney to the ambulance. 56.1 Stmt. at ¶¶ 51-52; Hakius BWC at 47:55; Brucato BWC at 49:25. Plaintiff complained about her arm in the ambulance, and Officer Brucato removed the handcuff from her right arm. 56.1 Stmt. at ¶ 53; Brucato BWC at 49:46-51:08.

## STANDARD OF LAW

"Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Jones v. Yazzo, 481 F. Supp. 3d 109, 111-12 (E.D.N.Y. 2020) (Cogan, D.J.) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Id.

(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 248).

"Once the moving party has met its burden, the opposing party 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> (quoting <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002)). "'Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.'" <u>Id.</u> (quoting <u>Zdzieboski v. Town of E. Greenbush</u>, 336 F. Supp. 2d 194, 201 (N.D.N.Y. 2004)). "In determining whether genuine issues of material fact exist, [courts] are required to 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" <u>Id.</u> (quoting <u>Patterson v. Cty. of Oneida</u>, 375 F.3d 206, 219 (2d Cir. 2004)).

## **ARGUMENT**

### **POINT I**

### **PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS**

Plaintiff's excessive force claim against defendant Garcia fails because his use of force was reasonable under the circumstances. At a minimum, defendant Garcia is entitled to qualified immunity because he did not violate any clearly established law.

**A.** **Defendant Garcia's use of force was reasonable under the circumstances.**

Whether an officer's use of force is excessive is analyzed under the Fourth Amendment's "reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). An officer's use of force is excessive if it is objectively unreasonable in light of the facts and

circumstances known to the officer. See Lennon v. Miller, 66 F.3d 416, 425-26 (2d Cir. 1995). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. Courts evaluate the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396-97.

Here, plaintiff's active, physical resistance to the officers' efforts to remove her to the hospital, combined with her dog's aggressive behavior towards the officers, made defendant Garcia's minimal use of force reasonable under the circumstances. 56.1 Stmt. at ¶¶ 32-44; Kim BWC at 3:43-4:20; Muller BWC at 5:43-6:11. Video footage—which is dispositive because it captures the entire incident—shows that defendant Garcia put plaintiff's arm behind her back against her resistance, which caused plaintiff's hand to reach the upper-middle portion of her back for about two seconds in the heat of the struggle. Id. at ¶¶ 38-41; Muller BWC at 5:58-6:01. Defendant Garcia then walked plaintiff towards the ambulance while holding her arm behind her back and handcuffed her when she did even more to resist, namely, planted her feet and pushed her weight backwards. Id. at ¶¶ 43-48; Kim BWC at 4:14-4:20; Muller BWC at 6:00-6:25; Hakius BWC at 46:56. Defendant Garcia's actions were entirely reasonable under these circumstances. See Gill v. Dawkins, No. 16-CV-1398 (LDH) (SB), 2020 U.S. Dist. LEXIS 223421, at *13-15 (E.D.N.Y. Nov. 30, 2020) (dismissing an excessive force claim where officers were alleged to have grabbed the plaintiff, twisted his arm behind his back "in an unnatural way," and pushed him up against a wall before eventually handcuffing him) (citing Bartlett v. City of New York, No. 03-

CV-1961 (CPS), 2005 U.S. Dist. LEXIS 4829, at *25-26 (E.D.N.Y. Feb. 11, 2005) (dismissing excessive force claim where an officer grabbed the plaintiff's wrist and twisted her arm behind her back after the plaintiff tried to prevent the officer from entering her home) and <u>Kalfus v. New York & Presbyterian Hosp.</u>, 476 F. App'x 877, 881 (2d Cir. 2012) (affirming dismissal of excessive force claim where officer twisted a trespasser's arm behind his back and pushed him even though he posed no physical threat)).

In <u>Gill</u>, the Court held that the plaintiff "twisting, turning, and shifting his body weight" while officers tried to gain control of him constituted sufficient resistance to justify the officers twisting plaintiff's arm behind his back "in an unnatural way." <u>Id.</u> Here, plaintiff did even more to resist than did the plaintiff in <u>Gill</u>—namely, she screamed at officers, tensed her arms, clenched her fists, kicked her leg out towards officers, and planted herself in a chair in below-freezing temperatures—and defendant Garcia faced the extra dynamic of plaintiff's dog acting aggressive as he attempted to gain control of plaintiff. Under these circumstances, defendant Garcia's use of force was objectively reasonable.

Additionally, with respect to plaintiff's allegation that her arm was fractured during the incident, defendants note that the mere existence of an injury does not necessarily mean that excessive force was used. See <u>Sagesse v. City of New York</u>, No. 22 Civ. 8414 (RA), 2024 U.S. Dist. LEXIS 56415, at *18 (S.D.N.Y. Mar. 28, 2024) ("reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury") (quoting <u>Ferraresso v. Town of Granby</u>, 464 F. Supp. 2d 296, 308) (D. Conn. 2009)); <u>see also</u> <u>Johnson v. Cnty. of Saratoga</u>, No. 9:18-CV-0096 (DNH/DEP), 2018 U.S. Dist. LEXIS 238917, at *9-10 (N.D.N.Y. Apr. 16, 2018) ("While Johnson alleges that he sustained an 'excruciating injury,' reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury."). This is

particularly so here, where the extent of defendant Garcia's use of force is not in dispute because it was entirely captured on video. There is no question as to the force employed by defendant Garcia. The only question is whether the force depicted on video was reasonable under the circumstances. And it clearly was.

At bottom, it is easy for lawyers and the Court—in the peace, quiet, and warmth of our offices and chambers—to criticize defendant Garcia's use of force millisecond-by-millisecond and inch-by-inch (to, for example, analyze the precise position of plaintiff's hand on her back for barely more than a second). It was not so easy for defendant Garcia, who, in the (metaphorical) heat of the moment, faced plaintiff screaming at him and physically resisting his efforts to control her, plaintiff's dog barking and growling, and dangerously-cold temperatures making it more and more urgent to get plaintiff off the porch and into an ambulance. Finding a constitutional violation under these circumstances would require the exact sort of "20/20 vision of hindsight" the Supreme Court has directed Courts not to apply when assessing whether a particular use of force "later seem[ed] unnecessary in the peace of a judge's chambers." Graham, 490 U.S. at 396-97.

Accordingly, the Court should dismiss plaintiff's excessive force claim against defendant Garcia.

**B.    Defendant Garcia is entitled to qualified immunity.**

At a minimum, defendant Garcia is entitled to qualified immunity because there is no clearly established law holding that putting an actively-resisting individual's arm behind her back in the manner depicted on video, under the circumstances facing defendant Garcia, rises to the level of a constitutional violation.

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

10

known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 144 (2d Cir. 2013) (citing Taravella v. Town of Wolcott, 599 F.3d 129, 133-34 (2d Cir. 2010)). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (emphasis added). Qualified immunity is intended to give "government officials breathing room to make reasonable but mistaken judgments," and it "protects all but the plainly incompetent or those who knowingly violate the law." City & County of San Francisco v. Sheehan, 575 U.S. 600, 611 (2015).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 572 U.S. 765, 779 (2014) (omission in original) (citation and internal quotation marks omitted); see also White v. Pauly, 580 U.S. 73, 79 (2017) (reiterating "the longstanding principle that 'clearly established law" should not be defined 'at a high level of generality'" and holding that the "clearly established" showing requires the identification of at least one case "where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment"); City of Tahlequah v. Bond, 595 U.S. 9, 12 (2021) ("We have repeatedly told courts not to define clearly established law at too high a level of generality . . . [i]t is not enough that a rule be suggested by then-existing

precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); <u>Rivas-Villegas v. Cortesluna</u>, 595 U.S. 1, 5 (2021) ("existing precedent must have placed the statutory or constitutional question beyond debate"). "Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." <u>City of Tahlequah</u>, 595 U.S. at 6 (quotations omitted).

To that end, the Supreme Court has repeatedly emphasized that such specificity is even more "important in excessive force cases . . . [because] [u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue[.]" <u>City of Escondido v. Emmons</u>, 586 U.S. 38, 42 (2019) (citing <u>Kisela v. Hughes</u>, 584 U.S. 100, 104 (2018)). For that reason, a plaintiff seeking to overcome a qualified immunity defense <u>must</u> identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." <u>Batt v. Buccilli</u>, 725 F. App'x 23, 28 (2d Cir. 2018) (emphasis in original); <u>see also</u> <u>Rivas-Villegas</u>, 595 U.S. at 6 (plaintiff "must identify a case that put [the defendant] on notice that his specific conduct was unlawful").

Here, defendants are not aware of any instance in which the Supreme Court or Second Circuit has held that putting an individual's arm behind their back in the manner depicted on video here violates the Constitution where the individual is actively resisting officers' efforts to restrain her (and where the officer is dealing with compounding factors such as an aggressive dog at the same time). Given the existence of cases such as <u>Gill</u>—which was decided about a year

prior to the incident—defendant Garcia could not possibly have been on notice that his actions violated the Constitution under these relatively unique circumstances (which they did not).

Accordingly, defendant Garcia is entitled to qualified immunity.

## POINT II

## PLAINTIFF'S ADA AND REHABILITATION ACT CLAIM FAILS

Plaintiff's ADA and Rehabilitation Act claim fails because, *inter alia*, defendants reasonably accommodated her disability.

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act applies to programs and entities that receive federal funding, and similarly "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals." McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (quoting 29 U.S.C. § 794(a)). The standards under these statutes are "nearly identical." Id.

Here, plaintiff alleges that the officers on scene violated the ADA and Rehabilitation Act because their actions "were not in compliance with the services set forth by the NYPD in Patrol Guide § 216-05"[1] insofar as they allegedly "needlessly confront[ed] her," "rush[ed] their encounter with her," did "not wait[] for a supervisor or other more appropriately trained officer to arrive at the scene before physically apprehending her," "escalat[ed] the

---

[1] Patrol Guide Procedure No. 216-05 was re-designated at Procedure No. 221-13 prior to the incident, which is available at https://www.nyc.gov/site/nypd/about/about-nypd/manual.page.

situation," and "us[ed] unreasonable force instead of other readily-available techniques for deescalating the situation and nonviolently bringing plaintiff to a hospital." Dkt No. 26 at ¶ 60.

Plaintiff's allegations are not supported by the evidence in the record, and they stand in stark contrast to her counsel's characterizations of the officers' actions as "commendable efforts" to "deescalate the incident." Dkt. No. 22 at 1. Indeed, the officers involved in this case exhibited extraordinary patience and restraint in their interactions with plaintiff. Despite the dangerously-cold weather, the officers spoke with plaintiff and attempted to convince her to voluntarily go to the hospital for forty-five minutes. 56.1 Stmt. at ¶ 31; All BWC, *passim*. The officers had plaintiff's family try to convince her to leave. Id. The officers consulted with EMTs, who also spoke with plaintiff. Id. at ¶¶ 26-27; Brucato BWC at 22:30-28:47; Hakius BWC at 28:45-41:39. The officers summoned and apprised the patrol supervisor—Sergeant Mohsin Mohsin—of the situation before plaintiff was taken into custody. Id. at ¶ 30; Mohsin BWC, *passim*. The officers summoned ESU officers, who attempted to convince plaintiff to go to the hospital. Id. at ¶¶ 28-29; Tagliaferro BWC at 31:43-32:34; Muller BWC at 1:00-5:44. Only after all these efforts failed did the ESU detectives physically take plaintiff to the ambulance—and even then, plaintiff physically resisted their efforts to do so. As such, the officers on scene went above and beyond in their efforts to accommodate plaintiff's disability, and thus plaintiff's ADA and Rehabilitation Act fails.

Furthermore, plaintiff cannot establish her ADA and Rehabilitation Act claim based on her allegation that defendant Garcia used excessive force against her for the additional reason that there is no evidence in the record indicating that Garcia employed the force he did because of plaintiff's disability, as opposed to her resistance. See Schnauder v. Gibens, 679 F. App'x 8, 11 (2d Cir. 2017) (summary order) (affirming dismissal of ADA and Rehabilitation Act

claim because plaintiff failed to show "that denial of treatment was attributable to bias based on disability").

Accordingly, plaintiff's ADA and Rehabilitation Act claim should be dismissed.

## POINT III

### PLAINTIFF'S MONELL CLAIM FAILS BECAUSE THERE WAS NO UNDERLYING CONSTITUTIONAL VIOLATION

Because the Court has bifurcated plaintiff's Monell claim, defendants move for summary judgment on the claim only insofar as plaintiff cannot maintain the claim because there was no underlying constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that his constitutional rights were violated by a City actor, then there cannot be Monell liability); Martinez v. City of New York, No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. June 27, 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. July 27, 2009). Accordingly, plaintiff's Monell claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, defendants City of New York and Garcia respectfully request that the Court grant summary judgment on all of plaintiff's claims, together with such costs, fees, and any other and further relief as the Court deems just and proper.

Dated:     New York, New York
           August 25, 2025

                                   MURIEL GOODE-TRUFANT
                                   Acting Corporation Counsel of the
                                   City of New York
                                   *Attorney for Defendants City and Garcia*
                                   100 Church Street, Room 3-196
                                   New York, New York 10007

                        By:     /s/ *Zachary Kalmbach*
                                   Zachary Kalmbach
                                   *Senior Counsel*

TO:     <u>Via ECF</u>
        All counsel of record

## <u>CERTIFICATION</u>

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States

District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total

number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes,

is 4,718. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated:        New York, New York
              August 25, 2025

                            MURIEL GOODE-TRUFANT
                            Corporation Counsel of the City of New York
                            *Attorney for Defendants City and Garcia*
                            100 Church Street
                            New York, New York 10007
                            (212) 356-2322


                   By:      /s/ *Zachary Kalmbach*
                            Zachary Kalmbach
                            *Senior Counsel*