UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

KRISTIN MERONE,

                              Plaintiff,

- against -

CITY OF NEW YORK and DANIEL G. GARCIA,

                              Defendants.

**DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

24 Civ. 8730 (BMC)

------------------------------------------------------------------------ X

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, defendants the City of New York and Daniel G. Garcia submit this statement, for purposes of this motion only, setting forth the material facts which they contend there are no genuine issues to be tried:[1]

1. On January 14, 2022, at around 10:00 p.m., several New York City Police Department officers responded to 14 Wadsworth Avenue in Staten Island in response to a 911 call from an individual reporting that his ex-girlfriend—who the officers later learned to be plaintiff—was refusing to leave his house. (I/Net Dispatcher Event Chronology at D000005, annexed to the Declaration of Zachary Kalmbach ("Kalmbach Decl.") as Exhibit ("Ex.") A; Deposition Transcript of Officer Brucato ("Brucato Tr.") at 14:9-17:6, annexed to the Kalmbach Decl. as Ex. B).

2. Officers Robert Hakius and Matthew Brucato arrived first and spoke with plaintiff's ex-boyfriend, who told the officers that plaintiff was refusing to leave his house and that she had mental issues. (Body-Worn Camera ("BWC") Footage of Officer Hakius ("Hakius BWC") at

---

[1] Defendants adopt the facts set forth herein only for purposes of the Motion of Summary Judgment and reserve the right to present different and/or conflicting facts at any trial in this matter. See Vasconcellos v. City of New York, 12 Civ. 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015) (Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice—the 'admission' . . . neither binds the party going forward if the motion is denied nor can it be admitted in evidence at trial.").

1:00-1:57, annexed to the Kalmbach Decl. as Ex. C).

3. It was about 20 degrees outside, and plaintiff appeared to be wearing a light jacket. (Brucato Tr. at 83:3-4, Kalmbach Decl., Ex. B; All BWC, *passim*).

4. Officers Hakius and Sciarrillo walked towards the porch of the house. (Hakius BWC at 2:03-2:17, Kalmbach Decl., Ex. C; BWC of Officer Sciarrillo ("Sciarrillo BWC") at 1:40-1:58, annexed to the Kalmbach Decl. as Ex. D).

5. As the officers reached the top of the stairs, plaintiff's dog growled and barked at them. (Sciarrillo BWC at 1:57-2:10, Kalmbach Decl., Ex. D).

6. The officers began speaking with plaintiff. (Sciarrillo BWC at 2:10, Kalmbach Decl., Ex. D).

7. Plaintiff stated, *inter alia*, that she lived in Long Island and that she was at the house because everywhere she went her family and friends harassed her. (Sciarrillo BWC at 3:20-3:28, Kalmbach Decl., Ex. D).

8. Plaintiff also stated that her car was in Queens because she caught her brother following her. (Hakius BWC at 3:35-4:10, Kalmbach Decl., Ex. C).

9. Officer Hakius told plaintiff that she needed to leave the house. (Hakius BWC at 4:25-4:45, Kalmbach Decl., Ex. C).

10. Plaintiff told the officers that she did not have any method of transportation. (Hakius BWC at 4:45-5:23, Kalmbach Decl., Ex. C).

11. Officers Hakius and Brucato went inside the house and spoke with the occupants. (Hakius BWC at 5:24-5:32, Kalmbach Decl., Ex. C).

12. A woman inside the house told the officers that plaintiff was the ex-boyfriend of the man outside, and that plaintiff had not been around in four years. (Hakius BWC at 5:32-5:50,

Kalmbach Decl., Ex. C).

13. The woman also told the officers that plaintiff had been hiding outside and that they had told plaintiff to leave. (Hakius BWC at 5:50-6:07, Kalmbach Decl., Ex. C).

14. The woman also told the officers that she believed plaintiff had been diagnosed with "a few things." (Hakius BWC at 6:07-6:15, Kalmbach Decl., Ex. C).

15. She also told the officers that plaintiff had "shown up out of nowhere" and had been hiding behind a barbecue since that morning. (Hakius BWC at 6:15-6:41, Kalmbach Decl., Ex. C).

16. The officers conferred and determined that plaintiff was an Emotionally Disturbed Person ("EDP"). (BWC Footage of Officer Brucato ("Brucato BWC") at 6:50-7:00, annexed to the Kalmbach Decl. as Ex. E).

17. Officer Brucato notified dispatch that plaintiff was an EDP, and an ambulance was summoned. (Brucato BWC at 7:20-7:40, Kalmbach Decl., Ex. E; I/Net Dispatcher Event Chronology at D000006, Kalmbach Decl., Ex. A).

18. Plaintiff told the officers that she was "freezing." (Hakius BWC at 7:30-7:34, Kalmbach Decl., Ex. C).

19. Officer Hakius spoke with plaintiff's parents, who stated that everything plaintiff told the officers was untrue. (Hakius BWC at 8:30-8:59, Kalmbach Decl., Ex. C).

20. Officer Hakius asked plaintiff to give her dog to her parents, and plaintiff refused. (Hakius BWC at 9:38-9:50, Kalmbach Decl., Ex. C).

21. Officer Hakius told plaintiff that she needed to be evaluated by EMS and that she might have to go to the hospital, and plaintiff indicated that she would not comply. (Hakius BWC at 9:50-12:10, Kalmbach Decl., Ex. C).

22. Officer Hakius then told plaintiff that if she refused to go to the hospital she would be placed in handcuffs. (Hakius BWC at 12:10-12:40, Kalmbach Decl., Ex. C).

23. Plaintiff stated, "I'm not moving." (Hakius BWC at 12:37, Kalmbach Decl., Ex. C).

24. Officer Hakius again told plaintiff she would be placed in handcuffs, and plaintiff responded, "you can't." (Hakius BWC at 12:38-12:42, Kalmbach Decl., Ex. C).

25. The officers and plaintiff's parents continued to plead with plaintiff until EMTs arrived. (Hakius BWC at 12:42-28:16, Kalmbach Decl., Ex. C).

26. EMTs arrived, conferred with the officers and plaintiff's parents, spoke with plaintiff, and determined that plaintiff was an EDP and needed to go to the hospital. (Brucato BWC at 22:30-28:47, Kalmbach Decl., Ex. E).

27. Officers, EMTs, and plaintiff's parents continued to plead with plaintiff until and after Emergency Service Unit ("ESU") officers arrived. (Hakius BWC at 28:45-41:39, Kalmbach Decl., Ex. C).

28. ESU detectives, including Detectives Garcia, Jason Muller, and Min Kim, arrived on scene, and other officers briefed them on the situation, including that plaintiff was an EDP, that officers had been negotiating with her "for like fifty minutes," that plaintiff was refusing to give up her dog, and that the dog was "mildly aggressive." (BWC Footage of Officer Andrew Tagliaferro at 31:43-32:34, annexed to the Kalmbach Decl. as Ex. F).

29. The ESU detectives spoke with plaintiff for another several minutes, but plaintiff continued to refuse to comply. (BWC Footage of Detective Muller ("Muller BWC") at 1:00-5:44, annexed to the Kalmbach Decl. as Ex. G).

30. The patrol supervisor, Sergeant Mohsin Mohsin, was summoned and responded to

the scene, and the officers conferred with him before plaintiff was taken into custody. (BWC Footage of Sergeant Moshin, *passim*, annexed to the Kalmbach Decl. as Ex. H).

31. In total, multiple patrol officers, EMTs, plaintiff's parents, and ESU detectives pleaded with plaintiff for about forty-five minutes. (All BWC, *passim*).

32. ESU Detective Kim reached towards plaintiff's dog, and plaintiff pulled the dog away from him. (BWC of Detective Kim ("Kim BWC") at 3:43, annexed to the Kalmbach Decl. as Ex. I).

33. Detectives Garcia and Muller attempted to take hold of plaintiff, and she immediately began screaming. (Kim BWC at 3:53, Kalmbach Decl., Ex. I; Muller BWC at 5:43, Kalmbach Decl., Ex. G).

34. Plaintiff tensed her arms, clenched her fists, continued to scream at the officers, and refused to move from the chair. (Kim BWC at 3:50-4:07, Kalmbach Decl., Ex. I).



35. Plaintiff's dog aggressively barked and growled at the officers as they tried to take

hold of plaintiff. (Kim BWC at 4:05, Kalmbach Decl., Ex. I).

36. While the dog was barking at the officers and plaintiff was screaming and resisting the detectives' efforts to control her, Detective Garcia attempted to put plaintiff's right arm behind her back. (Muller BWC at 5:55, Kalmbach Decl., Ex. G).

37. Plaintiff physically resisted Detective Garcia's efforts to do so. (Muller BWC at 5:48-5:57, Kalmbach Decl., Ex. G).

38. Detective Garcia continued to attempt to put plaintiff's right arm behind her back, and was eventually able to do so. (Muller BWC at 5:58, Kalmbach Decl., Ex. G).

39. Plaintiff's right hand reached as high as the upper-middle portion of her back, where it stayed for about than two seconds. (Muller BWC at 5:58-5:59, Kalmbach Decl., Ex. G).

40. At the same time, the dog continued to bark at the officers and plaintiff continued to scream at the officers and resist their efforts to control her. (Muller BWC at 5:58-5:59, Kalmbach Decl., Ex. G).

41. Plaintiff's right hand moved down towards the middle-lower portion of her back as Detectives Garcia and Muller were able to take control of her. (Muller BWC at 6:00, Kalmbach Decl., Ex. G).

42. Detective Garcia attempted to take control of the dog's leash while at the same time attempting to hold on to plaintiff. (Kim BWC at 4:13-4:17, Kalmbach Decl., Ex. I).

43. As Detective Garcia did so, plaintiff kicked her foot out towards his leg. (Kim BWC at 4:14, Kalmbach Decl., Ex. I).

44. While plaintiff continued to scream at the officers, Detective Garcia and Muller lifted her from her chair and guided her away from the porch. (Kim BWC at 4:14-4:20, Kalmbach Decl., Ex. I; Muller BWC at 6:00-6:11, Kalmbach Decl., Ex. G).

45. Plaintiff continued to scream at the officers as Detectives Garcia and Muller walked her down the porch steps, and Detective Garcia continued to hold onto plaintiff's right hand. (Muller BWC at 6:10-6:25, Kalmbach Decl., Ex. E).

46. Plaintiff attempted to pull her arm away from Detective Garcia, while she continued to scream at the officers. (Muller BWC at 6:10, Kalmbach Decl., Ex. G).

47. As Detectives Garcia and Muller attempted to walk plaintiff to the ambulance, plaintiff planted her feet and pushed her weight backwards. (Hakius BWC at 46:56, Kalmbach Decl., Ex. C).

48. Detective Garcia then handcuffed plaintiff. (Hakius BWC at 47:03-47:19, Kalmbach Decl., Ex. C).

49. Plaintiff stated "don't do that to my arm" just before Officer Hakius helped her onto a gurney. (Hakius BWC at 47:29, Kalmbach Decl., Ex. C).

50. This was the first time plaintiff said anything about her arm. (All BWC, *passim*).

51. Officer Hakius then helped plaintiff to sit on the gurney. (Hakius BWC at 47:55, Kalmbach Decl., Ex. C).

52. The EMTs then rolled the gurney to the ambulance. (Brucato BWC at 49:25, Kalmbach Decl., Ex. E).

53. Plaintiff complained about her arm in the ambulance, and Officer Brucato removed the handcuff from her right arm. (Brucato BWC at 49:46-51:08, Kalmbach Decl., Ex. E).

Dated: New York, New York
August 25, 2025

          MURIEL GOODE-TRUFANT
          Corporation Counsel of the
          City of New York
          *Attorney for Defendants City and Garcia*
          100 Church Street
          New York, New York 10007
          (212) 356-2322

By: /s/ *Zachary Kalmbach*
      Zachary Kalmbach
      *Senior Counsel*

TO: Via ECF
     All counsel of record