UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
  KRISTIN MERONE,                :

                                  :  **MEMORANDUM DECISION AND**

                   Plaintiff,    :  **ORDER**

                                  :

         - against -        :  24-cv-8730 (BMC)

                                  :

                                  :

  CITY OF NEW YORK and DANIEL G.  :
  GARCIA,                      :

                                  :

               Defendants.   :
------------------------------------------------------------ X

**COGAN**, District Judge.

The issue in this excessive force action under 42 U.S.C. § 1983 is whether a jury should be permitted to determine whether a police officer, with legitimate reason to handcuff the struggling plaintiff, applied too much force in bending one of her arms behind her back to apply the handcuffs, badly breaking her elbow. From reviewing the bodycam video, and even considering the need to avoid second-guessing a police officer who must make decisions on how much force to use in a dynamic situation in the field, the only conclusion I can reach is that the force caused the injury.

That is insufficient for me to conclude that the force was reasonable as a matter of law. However, the absence of any legal authority putting the officer on notice of how much force should be used in securing a resisting suspect's arm behind her back or special considerations about the maximum permissible angle of a suspect's arm in that situation warrants the application of qualified immunity, and defendants' motion for summary judgment is granted on that ground.

Plaintiff also asserts a claim under the Americans with Disabilities Act and the Rehabilitation Act.  Her theory is apparently that the police officer had to do more to accommodate her mental impairment.  When one considers that the officer was entitled to rely on the efforts of his fellow officers, who did everything anyone could do to persuade plaintiff to go with them for a mental health evaluation, about which efforts the defendant police officer learned upon his arrival on the scene, there was no other accommodation that could reasonably have been made.  After nine hours in the freezing cold, with a steadfast refusal, plaintiff clearly wasn't going to go for the mental health evaluation she needed unless the officer forcibly removed her.

## BACKGROUND

None of the facts can be disputed because they are all captured unambiguously on police bodycam footage.  In addition, although it is not significant, plaintiff's response to defendant's Local Rule 56.1 statement is argumentative and non-responsive, and defendants' response to those facts are deemed admitted.  See Local Rule 56.1; Epstein v. Kemper Ins. Companies, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) ("Statements in an affidavit or Rule 56.1 statement are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence.").

Plaintiff, in the grasp of a mental health crisis in which she feared that her brother and perhaps her parents were going to kill her or her dog, went to the home of a former boyfriend who she had not seen in four years.  In dangerously cold weather, and wearing a light jacket, she remained outside his house with her dog for about nine hours, sometimes hiding behind a barbecue grill and sometimes sitting in a chair on the front porch.  The former boyfriend or his sister ultimately called her parents and the police to assist her or at least have her removed.

2

Demonstrating overwhelming patience, the police officers who first arrived on the scene, assisted by her father, who also displayed great patience, tried to persuade plaintiff to leave for around an hour in the freezing cold but could not, even though she repeatedly acknowledged that she was freezing. Plaintiff finally agreed to leave the curtilage of the house, but well before that time, the police officers had determined that she was an emotionally disturbed person and had to be taken to a hospital for an evaluation under New York's Mental Hygiene Law. When they so advised her, she refused to accompany them or rise from the chair on the porch in which she was sitting.

The police called Emergency Medical Services for that purpose and their Emergency Services Unit to remove the dog (as plaintiff would not give up the dog to her father, and the dog had barked at the police officers upon their arrival), but plaintiff refused to accompany them or allow her parents to take the dog. The defendant here, Det. Daniel Garcia, arrived at the scene after the bulk of the negotiations with plaintiff had failed but he was brought up to date by the numerous officers already present. He determined that since plaintiff would not voluntarily go to the hospital or the waiting ambulance and the police could not simply release her on the street, plaintiff had to be handcuffed and escorted to the ambulance.

After she refused one last entreaty from Det. Garcia to give up her dog to her father, Det. Garcia directed removal of the dog and attempted to handcuff plaintiff. He forcibly removed her from the chair in which she was sitting and took control of her arms, placing first her right arm behind her back so that it would be immobilized, and he could apply a handcuff to it. In doing that, he bent her arm behind her back substantially more than 90° at the elbow, breaking her elbow and permanently injuring her.

3

Plaintiff's claims are for: (1) the use of excessive force, in violation of the Fourth Amendment; and (2) violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act based on her mental disability.

## DISCUSSION

### I

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it might affect the outcome of the suit under governing law." Tracy v. Freshwater, 623 F.3d 90, 95 (2d Cir. 2010) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)). It is an "axiom . . . in ruling on a motion for summary judgment [that] '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 572 U.S. 650, 651 (2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

Ultimately, summary judgment should be granted "only if, taking all of plaintiff['s] evidence as true, [a court] find[s] that no reasonable juror could conclude that plaintiff[ ] ha[s] established that the . . . police violated plaintiff['s] constitutional rights under circumstances subjecting the [defendants] to liability under § 1983." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122-23 (2d Cir. 2004).

### II

To establish that "the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, [a plaintiff] must establish that the government interests at stake were outweighed by 'the nature and quality of the intrusion on [the plaintiff's] Fourth Amendment interests.'" Amnesty Am., 361 F.3d at 123 (quoting Graham v. Connor, 490 U.S.

386, 396 (1989)).  "[T]he factfinder must determine whether, in light of the totality of the

circumstances faced by the arresting officer, the amount of force used was objectively reasonable

at the time."  Id. (citing Graham, 490 U.S. at 397).  This analysis "requires careful attention to

the facts and circumstances of each particular case, including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight."  Id. (quoting Graham, 490

U.S. at 396).

     "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers, violates the Fourth Amendment."  Tracy, 623 F.3d at 96 (quoting Graham, 490 U.S. at

397).  Importantly, "[g]iven the fact-specific nature of the inquiry, granting summary judgment

against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder

could conclude that the officers' conduct was objectively unreasonable."  Amnesty Am., 361

F.3d at 123 (citing O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003)).  The Supreme Court has set

forth several non-exclusive factors in determining whether an excessive force claim should go to

the jury: "the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight."  Graham v. Connor, 490 U.S. 386, 396 (1989).

     The bodycam video yields two indisputable conclusions.  First, some level of force had to

be used.  Plaintiff and her dog had been outside in the freezing cold for over nine hours; she was

wearing a light jacket; she simply would not get up out of the chair in which she was sitting

despite endless entreaties from the police officers; and they had no way of getting her to the

ambulance without getting her up from the chair.  They could not, and, constitutionally, did not

have to, wait her out interminably, especially with the danger of injury from exposure,

5

principally to her and her dog.  Second, once it is accepted that some measure of force had to be

used, as I think it must be, there was nothing excessive about Det. Garcia applying some degree

of force to handcuff her behind her back.  She was actively struggling as he hauled her up out of

the chair, and her unrestrained arms created a danger to him and all the officers that were around

her.[1]  See Graham, 490 U.S. at 396.

The only issue is whether in restraining her arms, he twisted her right arm up not just a

little farther, but much farther than may have been necessary to effectuate the restraint.  The

bodycam footage shows that the twist was at a sharply acute angle that is consistent with the fact

that post-incident, plaintiff needed multiple surgeries and the insertion of hardware in her arm.

Of course, it is well established that the mere occurrence of injury in a police encounter,

even severe injury, is not dispositive on the issue of excessive force.  See, e.g., Sanchez v. Port

Auth. of New York & New Jersey, No. 08-cv-1028, 2012 WL 1068078, at *9 (E.D.N.Y. March

29, 2012) ("[R]easonable force does not become unconstitutional merely because it caused the

plaintiff serious injury.").  And Det. Garcia did not have a protractor to measure the angle of

plaintiff's arm – even if he did, there is no indication in the record what the least acute angle

would have been to immobilize her arm, a question that would be informed by the dynamics of

her movement and the flexibility of her joints.  Those were unknown variables that he could

hardly have been expected to consider in the split second he had to make that determination.

Moreover, although plaintiff points out that Det. Garcia did not display nearly the same amount

---

[1] Plaintiff mischaracterizes the facts in numerous ways that are contradicted by the bodycam footage.  First, plaintiff
was resisting.  She could no more refuse to rise from her chair in the freezing cold in response to the police effort to
persuade her than a person could lie down in the middle of a road and not move when requested to do so by the
police.  In both instances, the police are permitted to use reasonable force when faced with dangerous intransigence.
Second, Det. Garcia did not have to start the persuasion process all over again when he got there, having been
informed by his fellow officers of what had transpired.  The potential harm to plaintiff was cumulative from the nine
hours she had been exposed to the elements.

of patience as his fellow officers did in trying to persuade plaintiff to voluntarily go to the

hospital (in fact, he demonstrated impatience), Det. Garcia was clearly brought in as the "closer"

to end the situation after his fellow officers had failed, and he did not have to start from scratch –

he could rely on his knowledge of the unsuccessful entreaties that his fellow officers had been

making for an hour in the gelid weather to conclude that the time had come to forcibly remove

and restrain plaintiff.[2]  See United States v. Colon, 250 F.3d 130, 137 (2d Cir. 2001).

Balancing all these considerations, however, I cannot find that the force Det. Garcia used

was reasonable as a matter of law.  A reasonable person could view the bodycam video and

conclude that the angle was sharper than necessary to apply the handcuff and that a less acute

angle would have avoided the injury.  I acknowledge, however, that the question is close,

because such a determination might require too much speculation to satisfy plaintiff's burden of

proving excessive force, and require second-guessing of a decision in the field under post-hac

conditions – courtroom conditions – that are entirely different than those that Det. Garcia faced

during the encounter.

Nevertheless, it is defendants' burden on summary judgment to show that no reasonable

jury could find in favor of plaintiff.  See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005).

Unable to resolve that question as a matter of law, defendants are denied summary judgment on

their contention that the amount of force used was reasonable.

---

[2] Plaintiff has submitted a report from an expert in police procedure in opposition to the motion for summary judgment.  Its conclusion is that Det. Garcia's conduct diverged from the NYPD Patrol Guide.  It reaches this conclusion by noting that Det. Garcia demonstrated signs of frustration that plaintiff had refused to be persuaded by the other officers' earlier importunings and, in the expert's opinion, Det. Garcia should have kept trying to persuade her to comply rather than restrain her.  It doesn't mention the freezing cold nor describe the extent of the other officers' efforts to obtain cooperation.  Although the expert might be able to place the provisions of the Patrol Guide before the jury, see Martinez v. City of New York, No. 16-cv-79, 2022 WL 17090267, at *14 (E.D.N.Y. Nov. 18, 2022), it is not at all clear that her selective application of the facts in the bodycam footage would assist the jury in deciding the factual issues in this case.

**III**

That does not end the inquiry, however, because defendants have also invoked qualified immunity.

Qualified immunity protects public officials from civil liability if, *inter alia*, "the defendant's action did not violate clearly established law." Coggins v. Buonora, 776 F.3d 108, 114 (2d Cir. 2015) (quoting Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996)). "[A]n officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Frost v. New York City Police Dep't, 980 F.3d 231, 252 (2d Cir. 2020) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015)). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus . . . officers are entitled to qualified immunity unless existing precedent *squarely governs* the specific facts at issue." Id. (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018)) (emphasis added). "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." Id.

> [I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."

Kisela v. Hughes, 584 U.S. 100, 105 (2018) (quoting Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014)).

There can be no doubt that at the time Det. Garcia applied the handcuff to plaintiff's arm, "the use of excessive force in handcuffing was prohibited by clearly established constitutional law." Cugini v. City of New York, 941 F.3d 604, 615 (2d Cir. 2019). But as the Second Circuit recognized in Cugini, that broad statement of law does not answer the qualified immunity question, which requires that a court's "analysis . . . be 'particularized' to the facts of the case." Id. at 616 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The cases upon which plaintiff relies are a far cry from the facts present here. Plaintiff paradoxically relies on Cugini, but Cugini affirmed dismissal on qualified immunity grounds because no controlling authority answered the question of whether an officer had to respond to a non-verbal complaint that he had applied handcuffs too tightly. That has nothing to do with whether and to what degree an officer is charged with making a split-second decision as to the minimum "safe" yet effective angle at which to place a suspect's arm behind her back in applying handcuffs.

The only other case upon which plaintiff relies is Weather v. City of Mount Vernon, 474 F. App'x 821 (2d Cir. 2012) (summary order). At the outset, we must note that to clearly establish a constitutional right in a case arising out of an incident in New York, the authority upon which a plaintiff relies must be from the Supreme Court, the United States Court of Appeals for the Second Circuit, decisions from other circuit courts, or a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." See Cugini, 941 F.3d at 615; see also Ashcroft v. al-Kidd, 563 U.S. 731, 746 (2011) (Kennedy, J., concurring) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). Significantly, for our purposes, summary orders issued by the Second Circuit – because they are expressly non-precedential – rarely establish constitutional rights with sufficient clarity to foreclose qualified

9

immunity.  See Burns v. Martuscello, 890 F.3d 77, 94 (2d Cir. 2018) (declining to find right

"clearly established" based on a summary order); Jackler v. Byrne, 658 F.3d 225, 244 (2d Cir.

2011) ("[T]he rationale underlying the Rule [prohibiting reliance on summary orders to clearly

establish constitutional rights for purpose of qualified immunity] is that such orders, being

summary, frequently do not set out the factual background of the case in enough detail to

disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make

our summary ruling applicable to the new case."); cf. Ricciuti v. Gyzenis, 832 F. Supp. 2d 147

(D. Conn. 2011) ("[T]he Court hesitates to give weight to the Second Circuit's unpublished

opinion . . . precisely because it is unpublished.  In fact, the Second Circuit [has] cautioned

district courts against doing that very thing."), aff'd, 832 F.3d 162 (2d Cir. 2016).

Like most summary orders, the decision in Weather "assume[s] the parties' familiarity

with the underlying facts, procedural history, and specification of the issues for review."  474 F.

App'x at 822.  As the Court noted in Jackler, that leaves the pronounced possibility that facts

relevant to our analysis do not appear in Weather.  But in any event, to the extent that Weather

discusses the facts, they contain crucial distinctions to those present here.  Unlike our plaintiff,

Weather was not resisting or refusing police commands to accompany them; he had committed

no crime (true, our plaintiff committed no crime, but she had to be escorted to the ambulance

under the Mental Hygiene Law for her own safety); and, perhaps most importantly, a jury found

that the officer "slamm[ed Weather] into [a] brick wall."  Weather, 474 F. App'x at 823.  By

itself, slamming someone who is not resisting into a brick wall would seem to preclude qualified

immunity.

As the first discussion point of this decision establishes, although the issue of whether

Det. Garcia used reasonable force is factual, it is close.  The bodycam video discloses that the

10

only thing he may have done wrong was twist plaintiff's arm up too high. "Too high" may be a factual question, but there is no authority telling officers what that means, and, as noted above, the mere fact that injury resulted is not enough. In the absence of such guidance, Det. Garcia is entitled to qualified immunity.

## IV

Plaintiff additionally brings a novel claim under § 1983, invoking Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Her theory is that she is a disabled person because of her mental impairment; that the officers on the scene did not comply with the Patrol Guide in dealing with a mentally disturbed person; that the application of handcuffs was not a reasonable accommodation under the circumstances; and that § 1983 makes the non-compliance with the ADA and the Rehabilitation Act actionable. "By all these actions, defendants have deprived plaintiff of rights secured by the United States Constitution, 42 U.S.C. § 12132 [ADA] and 29 U.S.C. § 794 [Rehabilitation Act]."

Plaintiff's theory again seeks to separate Det. Garcia from all the other officers on the scene, without recognizing that he knew of their efforts and that he did not have to re-commence the negotiations with her after the nine hours she had spent and the one hour the other officers had spent in the freezing cold. Even plaintiff's reliance on the Patrol Guide is based on her disregard of the fellow officer rule, see United States v. Colon, 250 F.3d 130, 137 (2d Cir. 2001), namely, the application of the Patrol Guide to Det. Garcia's conduct without regard to the other officers' efforts. Assuming parity between the Patrol Guide and the ADA/Rehabilitation Act, which is doubtful, it is the City which plaintiff seeks to hold liable, and no reasonable jury could watch the videos and find a lack of effort by City employees collectively to accommodate plaintiff. Indeed, plaintiff's attorney himself described the actions of the other police officers as

11

"commendable efforts." It takes no more than a review of the bodycam footage to conclude that the City did everything possible to accommodate plaintiff, and her claim must therefore be rejected in that action as a matter of law.[3]

V

The Court previously severed the <u>Monell</u> claim against the City on the theory that if Det. Garcia used reasonable force as a matter of law, a <u>Monell</u> claim could not be maintained. The City's motion seeks to dismiss the <u>Monell</u> claim based on its argument that Det. Garcia did, in fact, use reasonable force as a matter of law. Having rejected that argument, the <u>Monell</u> claim survives defendants' motion.

**CONCLUSION**

Defendants' motion to dismiss is granted to the extent that plaintiff's claims for excessive force against Det. Garcia are dismissed on qualified immunity grounds, and her claim under the ADA and Rehabilitation Act is also dismissed. The motion is denied as to her remaining claims.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
       November 26, 2025

---

[3] Two other points bear noting. First, although it is not entirely clear from plaintiff's complaint whether she intends to do so, plaintiff cannot proceed against Det. Garcia individually under the ADA and Rehabilitation Act as those statutes do not provide for individual liability, nor are individuals "covered persons," *i.e.* persons who receive federal funds. See <u>Murray v. Tanea</u>, 357 F. Supp. 3d 226, 230 (W.D.N.Y. 2019); <u>Perros v. Cnty. of Nassau</u>, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017). Second, perhaps recognizing this, plaintiff characterizes her claims as "constitutional" claims under § 1983, which of course the ADA and Rehabilitation Act are not – they are statutory claims. Whether they are within the kind of statutory claims that may be remedied under § 1983, <u>see, e.g.</u>, <u>Health & Hosp. Corp. of Marion Cnty. v. Talevski</u>, 599 U.S. 166 (2023) (allowing Federal Nursing Home Reform Act claims); <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980) (allowing Social Security Act claims); <u>Livadas v. Bradshaw</u>, 512 U.S. 107 (1994) (allowing National Labor Relations Act claims), is not something the parties have addressed and so the Court will not either.